LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorney for Plaintiffs and the Class*

FILED
CLERK

2015 APR 14  PM 3: 10

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

AMON, CH.J.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

LEVY, M.J.

-------------------------------------------------x

IN HONG CHONG,
LOURDES ROSADO,
LYNN MOORE,
JOSEFINA VALDEZ,
JOHN DOE (ILLINOIS),
JOHN DOE (FLORIDA),
JOHN DOE (MICHIGAN)
and JOHN DOES 1-100, on behalf of
themselves and others similarly situated,

              Plaintiffs,

       - against -


KAO USA INC.

             Defendant.

-------------------------------------------------x

**CV 15 - 2131**

Case No.

**CLASS ACTION COMPLAINT**


<u>JURY TRIAL DEMANDED</u>

      Plaintiffs, IN HONG CHONG, LOURDES ROSADO, LYNN MOORE, JOSEFINA

VALDEZ, JOHN DOE (ILLINOIS), JOHN DOE (FLORIDA), JOHN DOE (MICHIGAN) and

JOHN DOES 1-100 (collectively, "Plaintiffs") on behalf themselves and all other persons

similarly situated, by their undersigned attorneys, as and for their Complaint against the

Defendant, allege the following based upon personal knowledge as to themselves and their own

actions, and, as to all other matters, respectfully alleges, upon information and belief, as follows

(Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth

herein after a reasonable opportunity for discovery):

## NATURE OF THE ACTION

1.      This action seeks redress on a class-wide basis for deceptive and otherwise improper business practices that Defendant, KAO USA INC. (hereinafter, the "Defendant" or "KAO USA"), engages in with respect to the labeling and packaging of its "Ban® "Invisible Solid" antiperspirants and deodorants (herein referred to as the "Products" as such term is defined in Paragraph 22 below).

2.      Defendant, with the intent to induce consumers to purchase its Products for a premium, manufactures, markets and sells the Products (i) with labels that list a false and misleading net weight of actual usable deodorant/antiperspirant, (ii) with labels that list a false and misleading total net weight of deodorant/antiperspirant (whether usable or unusable) and (iii) with non-functional slack-fill, in violation of consumer protection laws of the 50 states and District of Columbia.

3.      Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not resale of the Products.

4.      During the Class Period, Defendant purposefully sold the Products with (i) labels that list a false and misleading net weight and (ii) non-functional slack-fill, throughout the United States. Defendant's misrepresentations include advertising and packaging the Products in containers which had:

> a) Net weight statements that were greater than the **_actual_** weight of usable product therein, referred to as "short weight" in industry parlance, which, when displayed for sale to Plaintiffs and other reasonable consumers, caused false representations as to the correct weight of the Products;

2

b) Net weight statements that were greater than the ***total*** net weight, including the unusable portion of deodorant/antiperspirant in the product containers therein, which when displayed for sale to Plaintiffs and other reasonable consumers, caused false representations as to the correct weight of the Products; and

c) Void space not visible by consumers, referred to as "***non-functional slack-fill.***" This non-functional slack-fill packaging, when displayed for sale to Plaintiffs and other reasonable consumers, caused the false impression that there was more product than actually packaged.

5.    Plaintiffs and Class members viewed Defendant's misleading labeling and Product packaging, relied on the representations and were thereby deceived in deciding to purchase the Products for a premium price.

6.    Defendant violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.  These statutes are:

    *a)*  Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
    *b)*  Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
    *c)*  Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
    *d)*  Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
    *e)*  California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
    *f)*  Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
    *g)*  Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
    *h)*  Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
    i)   District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
    *j)*  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
    *k)*  Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
    *l)*  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
    *m)* Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*

n) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*

o) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*

p) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*

q) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

r) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

s) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*

t) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

u) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*

v) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

w) Michigan Consumer Protection Act, § § 445.901, *et seq.;*

x) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

y) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

z) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

aa) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

bb) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

cc) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

dd) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*

ee) New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*

ff) New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq. ;*

gg) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*

hh) North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

ii) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

jj) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

kk) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

ll) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

mm)   Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

nn) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

oo) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

pp) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*

qq) Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

rr) Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et sep.;*

ss) Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

tt) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

uu) Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*

vv) Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*

ww)   West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

xx) Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*

yy) Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

7.     Defendant has deceived Plaintiffs and other consumers nationwide by mischaracterizing the volume and quantity of usable deodorant and antiperspirant in its Products. Defendant has been unjustly enriched as a result of its conduct.  Through these unfair and deceptive practices, Defendant has collected hundreds of millions of dollars from the sale of its Products that it would not have otherwise earned. Plaintiffs bring this action to stop Defendant's misleading practice.

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendant, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

9.     The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C § 1331 because it arises under the laws of the United States.

10.     The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

11.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

12.     The Court has personal jurisdiction over Defendant because its Products are advertised, marketed, distributed and sold throughout the United States; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendant is authorized to do business in New York State; and Defendant has sufficient

minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

13.     Venue is proper in this district pursuant to 28 U.S.C § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and Defendant is subject to personal jurisdiction in this District. Plaintiff CHONG purchased and used Defendant's Products in Queens County.

## PARTIES

### *Plaintiffs*

14.     Plaintiff, IN HONG CHONG is a citizen of the State of New York and resides in Queens County. Plaintiff CHONG was exposed to Defendant's Product packaging, and, in reliance on its representations, purchased the falsely labeled and slack-filled Product(s) for personal consumption in the State of New York within the past six months. Plaintiff CHONG has purchased Products from the Ban® Invisible Solids line, including the Ban® Invisible Solids deodorant/antiperspirant in the "Sweet Simplicity" scent for the purchase price of approximately $5.49 each (or more). Plaintiff CHONG has purchased the Products from various stores, including but not limited to Walgreens. Plaintiff CHONG purchased the Product(s) at a premium price and was financially injured as a result of Defendant's deceptive conduct as alleged herein.

15.     Plaintiff, LOURDES ROSADO, is a citizen of and resides in the State of New Jersey. Plaintiff ROSADO was exposed to Defendant's Product packaging, and, in reliance on its representations, purchased the falsely labeled and slack-filled Product(s) for personal consumption in the State of New Jersey within the past six months. Plaintiff ROSADO has

purchased Products from the Ban® Invisible Solids line, including Ban® Invisible Solids deodorant/antiperspirant in the "Shower Fresh" scent for the purchase price of approximately $5.49 (or more). Plaintiff ROSADO has purchased the Products from various stores, including but not limited to ShopRite. Plaintiff ROSADO purchased the Product(s) at a premium price and was financially injured as a result of Defendant's deceptive conduct as alleged herein.

16.     Plaintiff, LYNN MOORE, is a citizen of and resides in the State of California. Plaintiff MOORE was exposed to Defendant's Product packaging, and, in reliance on its representations, purchased the falsely labeled and slack-filled Product(s) for personal consumption in the State of California within the six months. Plaintiff MOORE has purchased Products from the Ban® Invisible Solids line, including Ban® Invisible Solids deodorant/antiperspirant in the "Shower Fresh" scent for the purchase price of approximately $5.49 (or more). Plaintiff MOORE has purchased the Products from various stores, including but not limited to CVS. Plaintiff MOORE purchased the Product(s) at a premium price and was financially injured as a result of Defendant's deceptive conduct as alleged herein.

17.     Plaintiff, JOSEFINA VALDEZ, is a citizen of and resides in the State of California. Plaintiff VALDEZ was exposed to Defendant's Product packaging, and, in reliance on its representations, purchased the falsely labeled and slack-filled Product(s) for personal consumption in the State of California within the past six months. Plaintiff VALDEZ has purchased Products from the Ban® Invisible Solids line, including Ban® Invisible Solids deodorant/antiperspirant in the "Shower Fresh" scent for the purchase price of approximately $5.49 (or more). Plaintiff VALDEZ has purchased the Products from various stores, including but not limited to convenient stores and pharmacies. Plaintiff VALDEZ purchased the Product(s)

at a premium price and was financially injured as a result of Defendant's deceptive conduct as alleged herein.

18.     Plaintiff JOHN DOE (ILLINOIS) is, and at all relevant times hereto has been, a citizen of the State of Illinois. Plaintiff JOHN DOE (ILLINOIS) has purchased the Products for personal consumption within the State of Illinois. Plaintiff JOHN DOE (ILLINOIS) purchased the Products from convenience stores, supermarkets, and pharmacies located in Illinois. Plaintiff JOHN DOE (ILLINOIS) purchased the Products at a premium price and was financially injured as a result of Defendant's deceptive conduct as alleged herein.

19.     Plaintiff JOHN DOE (FLORIDA) is, and at all relevant times hereto has been, a citizen of the State of Florida. Plaintiff JOHN DOE (FLORIDA) has purchased the Products for personal consumption within the State of Florida. Plaintiff JOHN DOE (FLORIDA) purchased the Products from convenience stores, supermarkets, and pharmacies located in Florida. Plaintiff JOHN DOE (FLORIDA) purchased the Products at a premium price and was financially injured as a result of Defendant's deceptive conduct as alleged herein.

20.     Plaintiff JOHN DOE (MICHIGAN) is, and at all relevant times hereto has been, a citizen of the State of Michigan. Plaintiff JOHN DOE (MICHIGAN) has purchased the Products for personal consumption within the State of Michigan. Plaintiff JOHN DOE (MICHIGAN) purchased the Products from convenience stores, supermarkets, and pharmacies located in Michigan. Plaintiff JOHN DOE (MICHIGAN) purchased the Products at a premium price and was financially injured as a result of Defendant's deceptive conduct as alleged herein.

*Defendant*

21.     Defendant, KAO USA INC., is a corporation organized under the laws of Delaware with headquarters at 312 Plum Street Building, Cincinnati, OH 45201 and an address

for service of process at The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801. Kao USA Inc. is part of Kao Group, a Japanese corporation whose net sales totaled 1,315.2 billion yen in 2014, is a global company serving people in 32 countries and territories with consumer products in its core businesses – Beauty Care, Fabric and Home Care, Human Health Care and Chemicals. On the official Kao brands website, http://www.kaobrands.com, the company describes itself as "a leading global manufacturer of premium beauty care brands that are recognized around the world for their innovation and quality," such as Ban® deodorant and antiperspirants.

22.     Defendant owns the Ban® brand and sells the following misbranded products, depicted in **EXHIBIT A**, (herein, the "Products"):

   a.  Ban® Invisible Solids Deodorant (Unscented)
   b.  Ban® Invisible Solids Deodorant (Shower Fresh)
   c.  Ban® Invisible Solids Deodorant (Powder Fresh)
   d.  Ban® Invisible Solids Deodorant (Sweet Simplicity)
   e.  Ban® Invisible Solids Deodorant (Simply Clean)

## FACTUAL ALLEGATIONS

### Federal Regulations Regarding Misbranded Drugs and Cosmetics

23.     Drug and cosmetic manufacturers are required to comply with federal and state laws and regulations that govern the labeling and packaging of their products.

24.     The FDCA, 21 U.S.C. §§ 301 *et seq.*, governs the sale of foods, drugs and cosmetics in the United States. The classification of a product as a food, drug, or cosmetic, affects the regulations by which the product must abide. In general, a product is characterized according to its intended use, which may be established, among other ways, by: (a) claims stated on the product's labeling, in advertising, on the Internet, or in other promotional materials; (b) consumer perception established through the product's reputation, for example by asking why

the consumer is buying it and what the consumer expects it to do; or (c) the inclusion of ingredients well-known to have therapeutic use, for example fluoride in toothpaste.

25.    The FDCA defines <u>drugs</u>, in part, by their intended use, as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease," or "articles (other than food) intended to affect the structure or function of the body of man or other animals," 21 U.S.C. § 321(g)(1).

26.    Under 21 U.S.C. §§ 352(a) and 352(i)(1), respectively, "[a] drug or device shall be deemed to be misbranded. . . [i]f its labeling is false or misleading in any particular" and "[i]f it is a drug and its container is so made, formed, or filled as to be misleading. . . ."

27.    The FDCA defines <u>cosmetics</u> by their intended use, as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body . . . for cleansing, beautifying, promoting attractiveness, or altering appearance," 21 U.S.C. § 321(i)(1). Among the products included in this definition are deodorants.[1]

28.    Under 21 U.S.C. §§ 362(a) and 362(d), respectively, "[a] cosmetic shall be deemed to be misbranded. . . [i]f its labeling is false or misleading in any particular" and [i]f its container is so made, formed, or filled as to be misleading. . . ."

29.    The FDA has explained that "[s]ome products meet the definitions of both cosmetics and drugs," for example, "when a product has two intended uses" as with "deodorants that are also antiperspirants. . . [s]uch products must comply with the requirements for both cosmetics and drugs."[2]

---

[1] *See* http://www.fda.gov/Cosmetics/GuidanceRegulation/LawsRegulations/ucm074201.htm
[2] *Id.*

**State Regulations Regarding Misbranded Drugs and Cosmetics**

30.     Courts have recognized that federal law does not preempt state law causes of action for labeling violations if they "seek to impose requirements that are identical to those imposed by the FDCA." *Ackerman v. Coca Cola,* No. 09-0395, 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010). This is so because "a state statute mirroring its federal counterpart does not impose any additional requirement merely by providing a damage remedy for conduct that would otherwise violate federal law, even if the federal statute provides no private right of action." *Ackerman,* 2010 WL 2925955, at *6 (citing *Bates,* 544 U.S. at 432).

31.     Numerous states forbid the misbranding of drugs and cosmetics in language identical or similar to its federal counterparts, including the following:

*a)  New York*

> Drug: "A drug or device shall be deemed to be misbranded: a. If its labeling is false or misleading in any particular. . . h.(1)If it is a drug and its container is so made, formed or filled as to be misleading. . . ." New York Edn. Law § 6815.[3]
>
> Cosmetic: "A cosmetic shall be deemed to be misbranded: a. If its labeling is false or misleading in any particular . . . d. (1) [i]f its container is so made, formed, or filled as to be misleading. . . ." New York Edn. Law § 6818.

*b)  New Jersey*

> Drug: "For the purposes of this subtitle a drug or device shall also be deemed to be misbranded: a. If its labeling is false or misleading in any particular . . . i. (1) If it is a drug and its container is so made, formed or filled as to be misleading . . . ." NJ Rev Stat § 24:5-18.

---

[3] *See also* Title 24 of the Rules of the City of New York § 71.05 which provides that "[a] drug shall be deemed misbranded as set forth in the Federal Food, Drug, and Cosmetic Act (21 U.S.C. §352) or the State Education Law (§6815)..."

Cosmetic: "For the purposes of this subtitle a cosmetic shall also be deemed to be misbranded: a. If its labeling is false or misleading in any particular . . .  i.  (1) If it is a drug and its container is so made, formed or filled as to be misleading . . . ." NJ Rev Stat § 24:5-18.1.

c) *California*

Drug: "Any drug or device is misbranded if its labeling is false or misleading in any particular." California Health & Safety Code § 111330.

"Any drug or device is misbranded if its container is so made, formed, or filled as to be misleading." California Health & Safety Code § 111390.

Cosmetic: "Any cosmetic is misbranded if its labeling is false or misleading in any particular." California Health & Safety Code § 111730.

"Any cosmetic is misbranded if its container is so made, formed, or filled as to be misleading." California Health & Safety Code § 111750.

**Defendant's Products Are Misbranded Because They Are Packaged with False and Misleading Net Weight Statements and with Non-Functional Slack-Fill**

32.     Defendant manufactures, markets, sells and distributes, *inter alia*, consumer products under the well-known brand name Ban®. Defendant sells its products at most supermarket chains, convenience stores and major retail outlets throughout the United States, including but not limited to Costco, Target, Wal-Mart, Walgreens, CVS and Rite Aid, among others.

33.     The Products are sold as follows:

| Product | Approximate Price |
|---|---|
| Ban® Invisible Solids Deodorant (Unscented) | $5.49 (or more) |
| Ban® Invisible Solids Deodorant (Shower Fresh) | $5.49 (or more) |
| Ban® Invisible Solids Deodorant (Powder Fresh) | $5.49 (or more) |
| Ban® Invisible Solids Deodorant (Sweet Simplicity) | $5.49 (or more) |

12

| Ban® Invisible Solids Deodorant (Simply Clean) | $5.49 (or more) |

34.    Defendant has routinely packaged the Products with a false and misleading net weight and in containers with non-functional slack-fill. Non-functional slack-fill is the difference between the actual capacity of a container and the volume of product contained within. Defendant's misrepresentations also include advertising and packaging the Products in containers with net weight statements that are greater than the actual weight of usable product therein, referred to as "short weight," as well as net weight statements that are greater than the total weight of usable and unusable deodorant/antiperspirant therein.

**False and Misleading Net Weight Statements**

35.    All of the Products come in containers that list the net weight as 2.6 ounces. However, the actual deodorant/antiperspirant that is accessible by consumers for usage in the Products is less than the amount advertised due to a significant portion of the deodorant/antiperspirant being embedded under the plastic platform ("bed") on which the deodorant sticks stand. *See* **EXHIBIT B** for size of the bed in the Products.

36.    As Defendant has deceived Plaintiffs and consumers nationwide by mischaracterizing the usable quantity of deodorant/antiperspirant in the Products, Defendant's net weight labels are false and deceptive. *See* **EXHIBIT C** for the Products whose usable weight fall short of the net weight listed on the Product labels.

37.    Defendant also sold and continue to sell certain Products in which even the total net weight of the deodorant/antiperspirant (whether usable or not) is below the amount advertised on the labels as net weight. For such Product lines, even the sum of (i) the usable portion of deodorant/antiperspirant and (ii) the unusable portion located under the bed, are below the net weight as advertised on the Product labels. As such, Defendant's net weight labels are

false and deceptive. *See* **EXHIBIT D** for the Products whose total net weight fall short of the net weight listed on the Product labels.

38.     Plaintiffs and Class members were misled about the quantity of deodorant/antiperspirant in the Products.

39.     Both the usable and total net weights in the Ban® Products fall short of the net weight listed on the labels. *See* **EXHIBIT C** and **EXHIBIT D**. As a result, Plaintiffs and other consumers have purchased Products with less deodorant/antiperspirant than they believed they were purchasing.

**Non-Functional Slack-Fill**

40.     Plaintiffs and Class members were misled about the volume of the Products contained within the containers in comparison to the size of the Product packaging. The container size and dimensions for the Ban® Invisible Solids Products are exactly the same. The containers for the Products are approximately 5.375 inches long and 2.5 inches wide and elliptically shaped. The actual size of the deodorant/antiperspirant stick in the container is approximately 2.5 inches long and 2.5 inches wide. Thus, the size of the container has more than 3 inches of slack-fill in height and makes it appear to Plaintiffs and Class members that they are buying more than what is actually being sold. As such, Defendant's Products are packaged in containers made, formed or filled as to be misleading. *See* **EXHIBIT A** for the Ban® Invisible Solids Products with non-functional slack-fill. Plaintiffs and Class members only received 46% of what Defendant represented they would be getting due to the 54% non-functional slack-fill in the Products.

41.     There is no functional reason to package the Products with slack-fill. The Products are designed with a propel/repel mechanism. The propel/repel mechanism utilized in

14

the containers, which pushes up the deodorant stick, does not require an abundant amount of space to function. For example, a fully functioning travel-size deodorant container using a similar standard propel/repel mechanism is only 3 inches tall in its entirety with the propelling mechanism taking up only ⅜ of an inch. *See* **EXHIBIT E** for a travel size product with a similar propel/repel mechanism.

42.      Additionally, a brand new Product can be repelled to show that in its starting position, it has already been propelled to bring the deodorant/antiperspirant up to the top of the body of the container. There is no doubt that there is no practical business purpose for the non-functional slack-fill used to package the Products other than to mislead consumers as to the actual volume of usable deodorant/antiperspirant in the Products.

43.      Defendant's Products are also uniquely deceptive because consumers never actually see the amount of deodorant/antiperspirant they are using until the Product is used up, whereupon Plaintiffs and reasonable consumers will assume they used up all 5.375 inches of deodorant/antiperspirant bought when in fact, they only used 2.5 inches of height.

### Defendant's Products are Misbranded

44.      Defendant's failure to (i) state the correct net weight of usable deodorant/antiperspirant in the Products and (ii) properly package the Products without non-functional slack-fill constitute misbranding under federal and state laws because the Products are being sold (i) with labels that are false and misleading and (ii) in containers that are made, formed or filled as to be misleading. As a result of such conduct, Plaintiffs and Class members were misled (and Class members will continue to be misled) into believing that they were receiving more deodorant/antiperspirant than they actually were. Defendant lacked any lawful justification for doing so.

45.     In making their purchases, Plaintiffs and Class members relied on the net weight listed on the Product labels in evaluating how much deodorant/antiperspirant was in the Products. Plaintiffs and Class members also relied on the size of the container to believe that the entire volume of the packaging would be filled to capacity with deodorant/antiperspirant, exclusive of the container's functional elements. Labeling and packaging the Products misleadingly constitutes unlawful business acts and practices and are geared toward making consumers believe that they are buying more of the Product than what is being sold.

46.     Plaintiffs and Class members paid the full price of the Products and received less than the amount advertised. Additionally, they only received 46% of what Defendant represented they would be getting due to the 54% non-functional slack-fill in the Products. In order for Plaintiffs and Class members to be made whole, Plaintiffs and Class members would have to receive (i) the amount of usable deodorant/antiperspirant equal to or exceeding the net weight listed on the Products, (ii) the amount of usable and unusable deodorant/antiperspirant equal to or exceeding the net weight listed on the Products and (iii) enough of the deodorant/antiperspirant so that there is no non-functional slack-fill or have paid 54% less for each of the Products.

47.     The Products are designed with a propel/repel mechanism. The propel/repel mechanism utilized in the containers, which pushes up the deodorant stick, does not require an abundant amount of space to function. For example, a fully functioning travel-size deodorant container using a similar standard propel/repel mechanism is only 3 inches tall in its entirety with the propelling mechanism taking up only ⅜ of an inch. *See* **EXHIBIT E** for a travel size product with a similar propel/repel mechanism.

48.     Additionally, a brand new Product can be repelled to show that in its starting position, it has already been propelled to bring the deodorant/antiperspirant up to the top of the body of the container. There is no doubt that there is no practical business purpose for the non-functional slack-fill used to package the Products other than to mislead consumers as to the actual volume of usable deodorant/antiperspirant in the Products.

49.     Defendant's Products are also uniquely deceptive because consumers never actually see the amount of deodorant/antiperspirant they are using until the Product is used up, whereupon Plaintiffs and reasonable consumers will assume they used up all 5.375 inches of deodorant/antiperspirant bought when in fact, they only use 2.5 inches of height.

50.     Defendant could provide consumers with clarification as to the volume of the Products and usable quantity being sold simply by (i) properly listing the correct weight of usable deodorant/antiperspirant on the labels, and either of the following:

      a) Adding a line marking the height/actual dimensions of the Product on the labels, or
      b) Using a clear see-through package or using a see-through strip to allow consumers to discern the actual volume of deodorant/antiperspirant being sold.

**Plaintiffs and Class Members Were Injured as a Result of Defendant's Misleading and Deceptive Conduct**

51.     Defendant has violated federal and state laws against misbranding of drug and cosmetic products because it misled Plaintiffs and Class members about the actual net weight and volume of the Products in comparison to the size of the Products' packaging. The quantity of deodorant/antiperspirant accessible for usage in the containers is less than the net weight listed on the Product labels. For the Ban® Invisible Solids Products, even the total weight of both usable and non-usable deodorant/antiperspirant contained in such products is less than the net weight advertised by Defendant. Further, the size of the containers in relation to the actual

17

amount of the Products contained therein give the false impression that the consumer is buying more than they are actually receiving.

52.     Plaintiffs and Class members were exposed to Defendant's false Product labels and deceptive Product packaging.

53.     Defendant's labeling and Product packaging were material factors in Plaintiffs' and Class members' decisions to purchase the Products. Based on Defendant's labeling and Product packaging, Plaintiffs and Class members believed that they were getting more of the Products than was actually being sold or at the very least, believed they were getting the amount stated on the Product labels. Had Plaintiffs known Defendant's labeling was false and its packaging slack-filled, they would not have bought the Products.

54.     Plaintiffs did not know, and had no reason to know, that the Products contained less deodorant/antiperspirant than advertised or that the Products were packaged with non-functional slack-fill.

55.     Defendant's Product labeling and packaging as alleged herein is deceptive and misleading and was designed to increase sales of the Products. While a range of variation is permitted under federal law, Plaintiffs allege that the variance was willful and the consistently short-weighted Products are part of a systematic practice by Defendant. Weight and measure laws of the fifty states only create a safe harbor under state consumer laws where the misconduct is <u>not</u> intentional. Defendant intentionally made materially false and misleading representations regarding the size, amount and contents of the Products. Defendant's packaging is intended to mislead consumers into thinking that they are receiving more product than they actually are. Any shortfall is not due to unintentional variance but Defendant's intentional conduct. Such

intentional conduct explains why every Ban® Invisible Solids Product investigated by Plaintiffs and listed in the Exhibits fall short of the net weight listed on their respective containers.

56.     A reasonable consumer when deciding to purchase the Products would consider the types of misrepresentations alleged herein. A reasonable person would (and Plaintiffs did) attach importance to whether Defendant's Products are "misbranded," *i.e.,* not legally salable, or capable of legal possession, and/or contain false labels and non-functional slack-fill.

57.     Plaintiffs and Class members relied on the labeling and representations on Defendant' Product packaging.

58.     At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products were misbranded as set forth herein, and would not have bought the Products had they known the truth about them.

59.     Defendant's net weight misrepresentations and non-functional slack-fill packaging are misleading and in violation of FDA and consumer protection laws of each of the fifty states and the District of Columbia, and the Products at issue are misbranded as a matter of law. Misbranded products cannot be legally manufactured, advertised, distributed, held or sold in the United States. Plaintiffs and Class members would not have bought the Products had they known they were misbranded and illegal to sell or possess.

60.     As a result of Defendant's misrepresentations, Plaintiffs and thousands of others throughout the United States purchased the Products.

61.     Plaintiffs and the Class (defined below) have been damaged by Defendant's deceptive and unfair conduct in that they purchased Products with non-functional slack-fill and paid prices they otherwise would not have paid had Defendant not misrepresented the Products' quantity or actual size.

62.     Plaintiffs have standing to sue in this case because Plaintiffs have a personal injury in fact, which is caused by Defendant's misleading packaging and labeling practices alleged herein, and which a favorable decision will likely redress. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir.2012). Courts have routinely held that economic injury is sufficient for the standing requirement. *See, e.g., In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *11 (E.D.N.Y. Aug. 29, 2013)

## CLASS ACTION ALLEGATIONS

***The Nationwide Class***

63.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

***The New York Class***

64.     Plaintiff IN HONG CHONG seeks to represent a class consisting of the following subclass (the "New York Class"):

> All New York residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

***The New Jersey Class***

65.     Plaintiff LOURDES ROSADO seeks to represent a class consisting of the following subclass (the "New Jersey Class"):

> All New Jersey residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

*The California Class*

66.     Plaintiff LYNN MOORE seeks to represent a class consisting of the following subclass (the "California Class"):

> All California residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

67.     Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

68.     <u>Numerosity</u>: This action has been brought and may properly be maintained as a class action against Defendant under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are hundreds of thousands of members in the Nationwide Class, New York Class, New Jersey Class, and California Class. Based on sales of the Products, it is estimated that each Class is composed of more than 10,000 persons. Furthermore, even if subclasses need to be created for these consumers, it is estimated that each subclass would have thousands of members. The persons in each of the Classes are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

69.     <u>Common Questions Predominate</u>: Questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Classes because each

Class member's claim derives from the same false, misleading and deceptive misconduct. The common questions of law and fact involved predominate over any questions affecting only Plaintiffs or individual Class members. Thus, proof of a common or single set of facts will establish the right of each member of the Classes to recover. Among the questions of law and fact common to the Classes are:

    i.   Whether Defendant labeled, packaged, marketed, advertised and/or sold Products to Plaintiffs, and those similarly situated, using false, misleading and/or deceptive packaging and labeling;

    ii.   Whether Defendant's actions constitute violations of Section 502 (21 U.S.C. § 352(i)), Section 602 (21 U.S.C. § 362(d)) of the FDCA;

    iii.   Whether Defendant's actions constitute violations of misbranding laws in the fifty states and District of Columbia;

    iv.   Whether Defendant's actions constitute deceptive and unfair practices and/or violations of consumer protection laws in the fifty states and the District of Columbia;

    v.   Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of Products;

    vi.   Whether Defendant's labeling, packaging, marketing, advertising and/or selling Products constituted an unfair, unlawful or fraudulent practice;

    vii.   Whether Defendant's net weight disclosures on the Products' labels accurately reflect the net weight that can be used by the Class;

    viii.   Whether Defendant's net weight disclosures on the Products' labels accurately reflect the gross weight of deodorant/antiperspirant in the Products;

    ix.  The extent that the packaging of the Products during the relevant statutory period constituted unlawful slack-fill;

    x.  Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future;

    xi.  Whether the members of the Class have sustained damages as a result of Defendant's wrongful conduct;

    xii.  The appropriate measure of damages and/or other relief;

    xiii.  Whether Defendant have been unjustly enriched by its scheme of using false, misleading and/or deceptive labeling, packaging or misrepresentations; and

    xiv.  Whether Defendant should be enjoined from continuing its unlawful practices.

70.    Typicality: Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs purchased the Products during the Class Period and sustained similar injuries arising out of Defendant's conduct in violation of the consumer protection laws of each of the fifty states and the District of Columbia. Defendant's unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of the Class were caused directly by Defendant's wrongful misconduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

71.     Adequacy: Plaintiffs will fairly and adequately represent and pursue the interests of the Class and have retained competent counsel experienced in prosecuting nationwide class actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

72.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the Class to individually seek redress for the wrongful conduct alleged herein. If Class treatment of these claims were not available, Defendant would likely unfairly receive millions of dollars or more in improper charges.

73.     The class is readily definable, and prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a Class action.

74.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds

generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

75.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

76.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

77.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices, including advertising, marketing, distributing, and/or selling consistently and intentionally short-weighted Products, make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

## INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

78.     Plaintiff CHONG repeats and realleges each and every allegation contained above as if fully set forth herein and further alleges the following:

79.     Plaintiff CHONG brings this claim individually and on behalf of other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL § 349").

25

80.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

81.     Under NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

82.     Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.  The court may award reasonable attorney's fees to a prevailing plaintiff.

83.     The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Products with false net weight statements and in packaging resulting in non-functional slack-fill are unfair, deceptive, and misleading and are in violation of the NY GBL § 349. Moreover, New York State law broadly prohibits the misbranding of drugs and cosmetics in language identical to that found in regulations 21 U.S.C. § 352 *et seq* and 21 U.S.C. § 362 *et seq*, promulgated pursuant to the Federal, Food, Drug, and Cosmetic Act.

84.     Under New York Edn. Law § 6815, "[a] drug or device shall be deemed to be misbranded: a. If its labeling is false or misleading in any particular . . . h. (1)If it is a drug and its container is so made, formed or filled as to be misleading . . ." New York Edn. Law § 6818 similarly states, "[a] cosmetic shall be deemed to be misbranded: a. If its labeling is false or

26

misleading in any particular . . . d. (1) [i]f its container is so made, formed, or filled as to be misleading . . . ." The Rules of the City of New York also prohibit the misbranding of drugs and cosmetics and explicitly incorporate New York State and federal misbranding laws by reference. Under 24 R.C.N.Y. Health Code § 71.05 (f), drugs are deemed misbranded "as set forth in the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 352) or the State Education Law (§ 6815) . . . ." Cosmetics are deemed misbranded "as set forth in the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 362) or the State Education Law (§ 6818) . . . ." 24. *See* 24 R.C.N.Y. Health Code § 71.05 (h).

85.     Defendant should be enjoined from labeling its Products with false and misleading representations including, (i) labels that list a false and misleading net weight of actual usable product; (ii) labels that list a total net weight (whether usable or unusable product) that is false and misleading; and (iii) packaging the Products in a way that misleads consumers about the volume of usable Product within the containers in comparison to the size of the Products' packaging, as described above pursuant to NY GBL § 349, New York Edn. Law § 6815, New York Edn. Law § 6818, 24 R.C.N.Y. Health Code § 71.05, 21 U.S.C. § 352, and 21 U.S.C. § 362.

86.     The foregoing deceptive acts and practices were directed at consumers.

87.     Defendant should be enjoined from packaging its Products with false net weight statements and non-functional slack-fill or Plaintiffs and members of the Class will be harmed in that they will continue to be unable to rely on Defendant's packaging and net weight representations.

88.     Plaintiff CHONG individually and on behalf of all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this

proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

89.     Plaintiff CHONG repeats and realleges each and every allegation contained above as if fully set forth herein and further alleges the following:

90.     Plaintiff CHONG brings this claim individually and on behalf of other members of the Class for violations of NY GBL § 349.

91.     Defendant's business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

92.     The practices employed by Defendant, whereby Defendant advertised, promoted, marketed and sold its Products with false and misleading representations including, (i) labels that list a false and misleading net weight of actual usable product; (ii) labels that list a total net weight (whether usable or unusable product) that is false and misleading; and (iii) packaging the Products in a way that misleads consumers about the volume of usable Product within the containers in comparison to the size of the Products' packaging, are unfair, deceptive and misleading and are in violation of New York Edn. Law § 6815, New York Edn. Law § 6818, 24 R.C.N.Y. Health Code § 71.05, 21 U.S.C. § 352, and 21 U.S.C. § 362 in that said Products are misbranded. The practices of Defendant also violate NY GBL § 349 for, inter alia, one or more of the following reasons:

a) Defendant engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Products, which did, or tended to, mislead Plaintiff CHONG and the New York Class about facts that could not reasonably be known by them;

b) Defendant knowingly and falsely represented and advertised the amount of usable Product in its Product packaging with an intent to cause Plaintiff CHONG and members of the New York Class to believe that they were receiving more Product than they actually were;

c) Defendant failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

d) Defendant caused Plaintiff CHONG and the New York Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

e) Defendant failed to reveal material facts to Plaintiff CHONG and the New York Class with the intent that Plaintiff and the New York Class members rely upon the omission;

f) Defendant made material representations and statements of fact to Plaintiff CHONG and the New York Class that resulted in Plaintiff CHONG and the New York Class reasonably believing the represented or suggested state of affairs to be other than what they actually were; and

g) Defendant intended that Plaintiff CHONG and members of the New York Class rely on its misrepresentations and omissions, so that Plaintiff CHONG and the New York Class members would purchase the Products.

93.     The foregoing deceptive acts and practices were directed at consumers.

94.     Under all of the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton, and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

95.     Defendant's actions impact the public interest because Plaintiff CHONG and members of the New York Class were injured in exactly the same way as thousands of others purchasing the Products as a result of and pursuant to Defendant's generalized course of deception.

96.     By committing the acts alleged in this Complaint, Defendant has misled Plaintiff CHONG and the New York Class into purchasing the Products, in part or in whole, due to the erroneous belief that the Product packaging accurately depicts a container that is filled to capacity with usable Product, exclusive of the container's functional elements. In some instances, the Products fall short of the advertised net weight even when taking the unusable portion of deodorant/antiperspirant into account. These are deceptive business practices that violate NY GBL § 349.

97.     Defendant's deceptive Product packaging misled Plaintiff CHONG, and is likely in the future to mislead reasonable consumers. Had Plaintiff CHONG and members of the New York Class known of the true facts about the Products, they would not have purchased the Products and/or paid substantially less for another product.

98.     Plaintiff CHONG and the other Class members suffered a loss as a result of Defendant's deceptive and unfair trade acts. Plaintiff CHONG and other Class members purchased the Products at a premium price and were financially injured as a result of Defendant's deceptive conduct as alleged herein.

99.     As a result of Defendant's deceptive and unfair acts and practices, Plaintiff CHONG and the other Class members suffered monetary loss associated with the purchase of Products with net weight misrepresentations and non-functional slack-fill, i.e., receiving less than the advertised amounts and only approximately 46% of the capacity of the packaging due to the 54% non-functional slack-fill in the Products. The foregoing deceptive acts, omissions and practices set forth in connection with Defendant's violations of NY GBL § 349 proximately caused Plaintiff CHONG and other members of the New York Class to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff CHONG and other members of the New York Class are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT III

### NEW JERSEY CONSUMER FRAUD ACT,
### N.J.S.A.56: 8-1, *et seq.*

100.    Plaintiff LOURDES ROSADO repeats and realleges each and every allegation contained above as if fully set forth herein and further alleges the following:

101.    Plaintiff ROSADO brings this claim individually and on behalf of the other members of the New Jersey Class for violations of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

102.    At all relevant times, Defendant was and is a "person," as defined by N.J.S.A. 56:8-1(d).

103.    At all relevant times, Defendant's Products constituted "merchandise," as defined by N.J.S.A. 56:8-1(c).

104.    At all relevant times, Defendant's manufacturing, marketing, advertising, sales and/or distribution of the Products at issue met the definition of "advertisement" set forth by N.J.S.A. 56:8-1(a).

105.    At all relevant times, Defendant's manufacturing, marketing, advertising, sales and/or distribution of the Products at issue met the definition of "sale" set forth by N.J.S.A. 56:8-1(e).

106.    N.J.S.A. 56:8-2 provides that "[t]he act, use or employment by any person of any unconscionable practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission, …is declared to be an unlawful practice…"

107.    Plaintiffs and members of the Class are consumers who purchased consumer goods – the Ban® Invisible Solids Products – pursuant to a consumer transaction for personal use and are, therefore, subject to protection under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

108.    Defendant has made and continues to make deceptive, false and misleading representations including, (i) labels that list a false and misleading net weight of actual usable product; (ii) labels that list a total net weight (whether usable or unusable product) that is false and misleading; and (iii) packaging the Products in a way that misleads consumers about the volume of usable Product within the containers in comparison to the size of the Products' packaging, as alleged herein.

109.    As described in detail above, Defendant uniformly misrepresented to Plaintiff ROSADO and each member of the New Jersey Class, by means of its advertising, marketing and

Product packaging, that they were getting more of the Products than was actually being sold, or at the very least, the quantity advertised.

110. Defendant has therefore engaged in practices which are unconscionable, deceptive and fraudulent and which are based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material fact with the intent that others rely upon such concealment, suppression or omission in its manufacturing, advertising, marketing, selling and distribution of the Products. Defendant has therefore violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*

111. As a direct and proximate result of Defendant's improper conduct, Plaintiff ROSADO and other members of the New Jersey Class have suffered damages and ascertainable losses of moneys and/or property, by paying more for the Products than they would have, and/or by purchasing the Products which they would not have purchased, if the volume of such Products had not been misrepresented, in amounts to be determined at trial.

## COUNT IV

### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, Cal. Civ. Code § 1750, *et seq.*

112. Plaintiffs MOORE and VALDEZ repeat and reallege each and every allegation contained above as if fully set forth herein and further alleges the following:

113. Plaintiffs MOORE and VALDEZ bring this claim individually and on behalf of the other members of the California Class for Defendant's violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

114. This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* (the "CLRA"). This cause of action seeks monetary damages and injunctive relief pursuant to California Civil Code § 1782.

115.    On or about March 6, 2015, prior to filing this action, a CLRA notice letter was served on Defendant which complies in all respects with California Civil Code § 1782(a). Plaintiff LYNN MOORE sent KAO USA INC. on behalf of herself and the proposed Class, a letter via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff YE's letter is attached hereto as **EXHIBIT E.**

116.    Defendant's actions, representations, and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods to consumers.

117.    Plaintiffs MOORE and VALDEZ and California Class members are consumers who purchased the Products for personal, family or household purposes. Plaintiffs MOORE, VALDEZ and the California Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d). Plaintiffs MOORE and VALDEZ and the California Class members are not sophisticated experts with independent knowledge of the manufacturing or packaging of the Products.

118.    Products that Plaintiffs MOORE and VALDEZ and other California Class members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

119.    Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

120. Defendant's labeling and Product packaging violates federal and California law because it misleads consumers about (i) the actual amount of deodorant/antiperspirant accessible for usage; (ii) the total net weight (whether usable or unusable product); and (iii) the volume of the Products contained within the containers in comparison to the size of the Products' packaging. The reasonable consumer is given the false impression that he/she is buying more product than they are actually receiving.

121. California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it misrepresents that the Products have characteristics, benefits or quantities which they do not have.

122. Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By engaging in the conduct set forth herein, Defendant violated and continue to violate Section 1770(a)(9), because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that it advertises goods with the intent not to sell the goods as advertised.

123. Plaintiffs MOORE and VALDEZ and the California Class members are not sophisticated experts about the manufacturing process or packaging of the Products. Plaintiff MOORE and the California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

35

124.    Plaintiffs MOORE and VALDEZ and the California Class suffered injuries caused by Defendant because (a) they would not have purchased the Products on the same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Products due to Defendant's misrepresentations and deceptive Product packaging; and (c) the Products did not have the characteristics, benefits, or quantities as promised.

125.    Plaintiffs MOORE and VALDEZ request that this Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs MOORE AND VALDEZ and the members of the California Class will be harmed in that they will continue to be unable to rely on Defendant's packaging and net weight representations.

126.    Wherefore, Plaintiffs MOORE and VALDEZ seek damages, restitution, and injunctive relief for these violations of the CLRA.

## COUNT V

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,
### California Business & Professions Code §§ 17200, *et seq.*

127.    Plaintiffs MOORE and VALDEZ repeat and reallege each and every allegation contained above as if fully set forth herein and further alleges the following:

128.    Plaintiffs MOORE and VALDEZ bring this claim individually and on behalf of the members of the proposed California Class for Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

129.    The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

130.    Defendant's Product packaging violates federal and California law because it misleads consumers about (i) the actual amount of deodorant/antiperspirant accessible for usage; (ii) the total net weight (whether usable or unusable product); and (iii) the volume of the Products contained within the containers in comparison to the size of the Products' packaging. The reasonable consumer is given the false impression that he/she is buying more product than they are actually receiving.

131.    Defendant's business practices, described herein, violated the "unlawful" prong of the UCL by violating Sections 502 and 602 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 352, 21 U.S.C. § 362, California Health & Safety Code § 111390, the CLRA, and other applicable law as described herein.

132.    Defendant's business practice, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendant's advertising is of no benefit to consumers, and its failure to comply with the FDCA and parallel California laws concerning misleading product packaging offends the public policy advanced by the FDCA "to promote the public health" by "taking appropriate action on the marketing of regulated products." 21 U.S.C. § 393(b).

133.    Defendant violated the "fraudulent" prong of the UCL by misleading Plaintiffs MOORE and VALDEZ and the California Class to believe that quantity representations about the Products were lawful, true and not intended to deceive or mislead the consumers.

134.    Plaintiffs MOORE and VALDEZ and the California Class members are not sophisticated experts about the characteristics, benefits, or quantities of the Products. Plaintiff MOORE and the California Class acted reasonably when they purchased the Products based on their belief that Defendant's representations were true and lawful.

135.    Plaintiffs MOORE and VALDEZ and the California Class lost money or property as a result of Defendant's UCL violations because (a) they would not have purchased the Products on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Products due to Defendant's deceptive and misleading net weight statements and Product packaging; and (c) the Products did not have the characteristics, benefits, or quantities as promised.

## COUNT VI

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,
### California Business & Professions Code §§ 17500, *et seq.*

136.    Plaintiffs MOORE and VALDEZ repeat and reallege each and every allegation contained above as if fully set forth herein and further alleges the following:

137.    Plaintiffs MOORE and VALDEZ bring this claim individually and on behalf of the members of the proposed California Class for Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

138.    Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state... in any advertising device ... or in any other manner or means whatever... any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof,

which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

139.    Defendant engaged in a scheme of offering misbranded Products for sale to Plaintiffs MOORE and VALDEZ and the California Class members by way of product packaging and labeling. These materials misrepresented the true content and nature of the misbranded Products. Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Bus. & Prof. Code § 17500, *et seq.* in that the Product packaging and labeling were intended as inducements to purchase Defendant's Products, and are representations disseminated by Defendant to Plaintiffs MOORE and VALDEZ and the California Class members. Defendant knew that these representations were unauthorized, inaccurate, and misleading.

140.    Defendant's Product packaging violates federal and California law because it misleads consumers about (i) the actual amount of deodorant/antiperspirant accessible for usage; (ii) the total net weight (whether usable or unusable product); and (iii) the volume of the Products contained within the containers in comparison to the size of the Products' packaging. The reasonable consumer is given the false impression that he/she is buying more product than they are actually receiving.

141.    Defendant violated § 17500, *et seq.* by misleading Plaintiffs MOORE and VALDEZ and the California Class about the net weight and volume of the Products as described herein.

142.    Defendant knew or should have known, through the exercise of reasonable care that the Products were and continue to be misbranded, and that its representations about the quantity of usable Product were untrue and misleading.

143. Plaintiffs MOORE and VALDEZ and the California Class lost money or property as a result of Defendant's FAL violations because (a) they would not have purchased the Products on the same terms absent Defendant's illegal conduct as set forth herein, or if the true facts were known concerning Defendant's representations; (b) they paid a price premium for the Products due to Defendant's deceptive and misleading net weight statements and Product packaging; and (c) the Products did not have the characteristics, benefits, or quantities as promised.

**COUNT VII**

**VIOLATION OF ILLINOIS' CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**815 ILCS § 505, et seq.**

144. Plaintiff JOHN DOE (ILLINOIS) realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

145. Plaintiff JOHN DOE (ILLINOIS) brings this claim individually and on behalf of the other members of the Illinois Class for violations of Illinois's Consumer Fraud and Deceptive Business Practice Act, ("ICFA"), 815 ILC § 505, et seq.

146. Plaintiff JOHN DOE (ILLINOIS) and Illinois Class members are consumers who purchased the Products for personal, family or household purposes. Plaintiff JOHN DOE (ILLINOIS) and the Illinois Class members are "consumers" as that term is defined by the ICFA, 815 ILC § 505/1(e) as they purchased the Products for personal consumption or of a member of their household and not for resale.

147. Products that Plaintiff JOHN DOE (ILLINOIS) and other Illinois Class members purchased from Defendant were "merchandise" within the meaning of the ICFA, 815 ILC § 505/1(b).

148. Under Illinois law, 815 ILC § 505/2, "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." By engaging in the conduct set forth herein, Defendant violated and continues to violate § 505/2 of the ICFA, because Defendant's conduct constitutes unfair methods of competition and unfair or deceptive acts or practices, in that it misrepresents that the Products contain more deodorant than they actually do.

149. Defendant's packaging with non-functional slack-fill constitute a deceptive act or practice under the ICFA because the consumers are deceived or misled into believing that the containers contain more deodorant than they actually do.

150. Defendant intended that Plaintiff JOHN DOE (ILLINOIS) and other members of the Illinois Class rely on its deceptive act or practice. As described herein, the only purpose of labeling and marketing the Products is to deceive or mislead consumers into relying on the misinformation and believing that Products contain more deodorant than competitors' products.

151. Defendant's deceptive act or practice occurred in the course of trade or commerce. "The terms "trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property...." 815 ILC § 505/1(f). Defendant's deceptive act or practice occurred in the advertising, offering for sale, sale, or distribution of the Products.

152. Plaintiff JOHN DOE (ILLINOIS) and the Illinois Class suffered actual damage proximately caused by Defendant because (a) they would not have purchased the Products on the

same terms absent Defendant's illegal and misleading conduct as set forth herein, or if the true

facts were known concerning Defendant's representations; (b) they paid a price premium for the

Products due to Defendant's misrepresentations and deceptive marketing; and (c) the Products

did not have the characteristics or quantities as promised.

153.    Wherefore, Plaintiff JOHN DOE (ILLINOIS) seeks damages, restitution, and

injunctive relief for these violations of the ICFA.

**COUNT VIII**

**VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,**
**Fla. Stat. Ann. § 501.201, et seq.**

154.    Plaintiff JOHN DOE (FLORIDA) realleges and incorporates by reference the

allegations contained in all preceding paragraphs and further alleges as follows:

155.    Plaintiff JOHN DOE (FLORIDA) brings this claim individually and on behalf of

the Florida Class for Defendant's violations of Florida's Deceptive and Unfair Trade Practices

Act, Fla. Stat. Ann. § 501.201, et seq.

156.    Section 501.204(1) of the Florida Deceptive and Unfair Trade Practices Act

("FDUTPA") makes "unfair or deceptive acts or practices in the conduct or any trade or

commerce" in Florida unlawful.

157.    Throughout the Class Period, by advertising, marketing, distributing, and/or

selling the Products with non-functional slack-fill, to Plaintiff JOHN DOE (FLORIDA) and

other Florida Class members, Defendant violated the FDUTPA by engaging in false advertising

concerning the Products.

158.    Defendant has made and continues to make deceptive, false and misleading

statements concerning the Products, namely manufacturing, selling, marketing, packaging and

advertising the Products as alleged herein. Defendant falsely represented that the Products contain much more product than they actually do.

159.    Plaintiff JOHN DOE (FLORIDA) and other Florida Class members seek to enjoin such unlawful acts and practices as described above. Each of the Florida Class members will be irreparably harmed unless the unlawful actions of Defendant are enjoined in that they will continue to be unable to rely on the Defendant's misleading packaging and advertising.

160.    Had Plaintiff JOHN DOE (FLORIDA) and the Florida Class members known the misleading and/or deceptive nature of Defendant's claims, they would not have purchased the Products.

161.    Plaintiff JOHN DOE (FLORIDA) and the Florida Class members were injured in fact and lost money as a result of Defendant's conduct of improperly packaging the Products to contain non-functional slack-fill. Plaintiff JOHN DOE (Florida) and the Florida Class members paid for Defendant's premium priced Products, but received Products that were worth less than the Products for which they paid.

162.    Plaintiff JOHN DOE (FLORIDA) and the Florida Class seek declaratory relief, enjoining Defendant from continuing to disseminate their false and misleading statements, actual damages plus attorney's fees and court costs, and other relief allowable under the FDUTPA.

## COUNT IX

## MICHIGAN CONSUMER PROTECTION ACT,
### MCL §§ 445.901. et seq.

163.    Plaintiff JOHN DOE (MICHIGAN) realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

164.     Plaintiff JOHN DOE (MICHIGAN) brings this claim individually and on behalf of the Michigan Class for Defendant's violations under the Michigan Consumer Protection Act, MCL §§ 445.901. et seq. (the "MCPA").

165.     Defendant's actions constitute unlawful, unfair, deceptive and fraudulent actions/practices as defined by the MCPA, MCL §445.901, et seq., as they occurred in the course of trade or commerce.

166.     As part of their fraudulent marketing practices, Defendant engaged in a pattern and practice of knowingly and intentionally making numerous false representations and omissions of material facts, with the intent to deceive and fraudulently induce reliance by Plaintiff JOHN DOE (MICHIGAN) and the members of the Michigan Class. These false representations and omissions were uniform and identical in nature as they all represent that the Products have non-functional slack-fill.

167.     Defendant has made and continues to make deceptive, false and misleading statements concerning the packaging of their Products, namely manufacturing, selling, marketing, packaging and advertising the Products with false and misleading statements, as alleged herein. Defendant falsely represented that the Products contain much more deodorant than they actually do.

168.     Had Plaintiff JOHN DOE (MICHIGAN) and the Michigan Class known the misleading and/or deceptive nature of Defendant's claims, they would not have purchased the Products. Defendant's acts, practices and omissions, therefore, were material to Plaintiffs' decision to purchase the Products at a premium price, and were justifiably relied upon by Plaintiffs.

169. The unfair and deceptive trade acts and practices have directly, foreseeably and proximately caused damage to Plaintiff JOHN DOE (MICHIGAN) and other members of the Michigan Class.

170. The Defendant's practices, in addition, are unfair and deceptive because they have caused Plaintiff JOHN DOE (MICHIGAN) and the Michigan Class substantial harm, which is not outweighed by any countervailing benefits to consumers or competition, and is not an injury consumers themselves could have reasonably avoided.

171. The Defendant's acts and practices have misled and deceived the general public in the past, and will continue to mislead and deceive the general public into the future, by, among other things, causing them to purchase Products with false and misleading statements concerning their content at a premium price.

172. Plaintiff JOHN DOE (MICHIGAN) and the Michigan Class are entitled to preliminary and permanent injunctive relief ordering the Defendant to immediately cease these unfair business practices, as well as disgorgement and restitution to Plaintiff JOHN DOE (MICHIGAN) and the Michigan Class of all revenue associated with their unfair practices, or such revenues as the Court may find equitable and just.

## COUNT X

### BREACH OF EXPRESS WARRANTIES
### (All States)

173. Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein and further allege the following:

174. Plaintiffs bring this claim individually and on behalf of the nationwide Class.

175.    Defendant, as the manufacturer, marketer, distributor and seller of the Products, provided Plaintiffs and other members of the Class with written express warranties, including, but not limited to, warranties that the Products have a particular net weight. The weight listed on the Products' labels is inaccurate because the amount of deodorant/antiperspirant that is accessible for usage in the Products is significantly less than the net weight stated on the Products' labels. In some instances, the Products fall short of the advertised net weight even when taking the unusable portion of deodorant/antiperspirant into account. The net weight claims made by Defendant are an affirmation of fact that became part of the basis of the bargain and created an express warranty that the good would conform to the stated promise. Plaintiff placed importance on Defendant's net weight claims.

176.    Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing Products with the amount of deodorant as promised.

177.    As a proximate result of Defendant's breach of warranties, Plaintiffs and Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for products that did not conform to what Defendant promised in its promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than warranted or products that they would not have purchased and used had they known the true facts about them.

**COUNT XI**

**NEGLIGENT MISREPRESENTATION**
**(All States and the District of Columbia)**

178.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein and further allege as follows:

179.     Defendant, directly or through its agents and employees, made false representations, concealment and nondisclosures to Plaintiffs and members of the Class. Defendant, through its labeling, advertising and marketing of the Products, makes uniform representations regarding the Products.

180.     Defendant, as the manufacturer, packager, labeler and initial seller of the Products purchased by Plaintiffs and members of the Class, are in the unique position of being able to provide accurate information about its Products. Therefore, there is a special and privity-like relationship between Defendant and Plaintiffs and members of the Class. *See Ebin v. Kangadis*, 297 F.R.D. 561 (S.D.N.Y. March 24, 2014) (granting class certification on negligent misrepresentation claim where plaintiffs purchased olive oil with misrepresentations in a commercial transaction).

181.     Defendant had a duty to disclose the true nature of the Products and not sell them with false and misleading representations including, (i) labels that list a false and misleading net weight of actual usable product; (ii) labels that list a total net weight (whether usable or unusable product) that is false and misleading; and (iii) packaging the Products in a way that misleads consumers about the volume of usable Product within the containers in comparison to the size of the Products' packaging.

182.     Defendant had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiffs; Defendant actively concealed material facts from the Plaintiffs and Defendant made partial representations that are misleading because some other material fact has not been disclosed. Defendant's failure to disclose the information it had a duty to disclose

constitutes material misrepresentations and materially misleading omissions which misled the Plaintiffs who relied on Defendant in this regard to disclose all material facts accurately and truthfully and fully.

183.    Plaintiffs and members of the Class reasonably relied on Defendant's representation that its Products contain more deodorant/antiperspirant than actually packaged or at the very least, the advertised net weight.

184.    In making the representations of fact to Plaintiffs and members of the Class described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above.  The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

185.    Defendant, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

186.    Plaintiffs and members of the Class would have acted differently had they not been misled – i.e. they would not have paid money for the Product in the first place.

187.    Defendant has a duty to correct the misinformation it disseminated through its labeling and packaging of the Products. By not informing Plaintiffs and members of the Class of the correct usable and total net weights, or that the containers are packaged with non-functional slack-fill, Defendant breached its duty. Defendant also profited financially as a result of this breach.

188.    Plaintiffs and members of the Class relied upon these false representations and nondisclosures when purchasing Products, upon which reliance was justified and reasonably foreseeable.

189.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Products, and any interest that would have been accrued on all those monies, all in an amount to be determined according to proof at time of trial.

190.    Defendant acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiffs and members of the Class.

191.    Plaintiffs and members of the Class are entitled to punitive damages. Therefore, Plaintiffs pray for relief as set forth below.

## COUNT XII

### COMMON LAW FRAUD
### (All States and the District of Columbia)

192.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein and further allege as follows:

193.    Defendant intentionally made materially false and misleading representations regarding the size, amount and contents of the Products. Defendant sold the Products with false and misleading representations including, (i) labels that list a false and misleading net weight of actual usable product; (ii) labels that list a total net weight (whether usable or unusable product) that is false and misleading; and (iii) packaging the Products in a way that misleads consumers about the volume of usable Product within the containers in comparison to the size of the Products' packaging.

194.    Plaintiffs and members of the Class were induced by, and relied on, Defendant's false and misleading labeling and packaging representations and omissions and did not know at the time that they were purchasing the Products that the Products contained false and misleading representations.

195.    Defendant knew or should have known of its false and misleading labeling, packaging, misrepresentations and omissions. Defendant nevertheless continued to promote and encourage customers to purchase the Products in a misleading and deceptive manner.

196.    Plaintiffs and members of the Class have been injured as a result of Defendant's fraudulent conduct.

197.    Defendant is liable to Plaintiffs and members of the Class for damages sustained as a result of Defendant's fraud, in an amount to be determined at trial.

## COUNT XIII

### UNJUST ENRICHMENT
### (All States and the District of Columbia)

198.    Plaintiffs reallege and incorporate by reference the above paragraph as if set forth herein and further allege the following:

199.    Plaintiffs bring this claim individually and on behalf of the nationwide Class.

200.    Plaintiffs are entitled, under Rule 8(d), to plead unjust enrichment as an alternative theory of liability. *See St. John's Univ., New York*, 757 F. Supp. 2d. at 183-84 (E.D.N.Y. 2010).

201.    Defendant misled consumers about (i) the actual amount of deodorant/antiperspirant accessible for usage; (ii) the total net weight (whether usable or unusable product); and (iii) the volume of the Products contained within the containers in comparison to the size of the Products' packaging. The reasonable consumer is given the false impression that he/she is buying more product than they are actually receiving.

50

202.    As a result of Defendant's deceptive, fraudulent and misleading labeling, packaging, advertising, marketing and sales of Products, Defendant was enriched, at the expense of Plaintiffs and members of the Class, through the payment of the purchase price for Defendant's Products.

203.    Plaintiffs and members of the Class conferred a tangible benefit on Defendant, without knowledge that the Products contained false net weight statements and non-functional slack-fill. Defendant accepted and retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class with full knowledge and awareness of that, as a result of Defendant's unconscionable wrongdoing, Plaintiff and members of the Class were not receiving the Products as they had been represented by Defendant, and which reasonable consumers would have expected.

204.    Defendant will be unjustly enriched if it is allowed to retain the non-gratuitous benefits conferred by Plaintiffs and members of the Class, and each Class member is entitled to an amount equal to the amount they enriched Defendant and for which Defendant has been unjustly enriched.

205.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs, and all others similarly situated, in light of the fact that the net weight and volume of the Products purchased by Plaintiffs and members of the Class, was not what Defendant purported it to be by its labeling and packaging. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiffs, and all others similarly situated, of compensation for the ounces of deodorant/antiperspirant not received and for 54% of the purchase price of Products, which

represents the percentage of the amount of Product (46%) actually received to the size of the packaging.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief and judgment against Defendant as follows:

A. For an Order certifying the nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

B. For an order certifying the New York Class, appointing Plaintiff CHONG representative of the New York Class, and designating her counsel as counsel for the New York Class;

C. For an order certifying the New Jersey Class, appointing Plaintiff ROSADO representative of the New Jersey Class, and designating her counsel as counsel for the New Jersey Class;

D. For an order certifying the California Class, appointing Plaintiffs MOORE and VALDEZ representatives of the California Class, and designating their counsel as counsel for the California Class;

E. For an Order declaring the Defendant's conduct violates the statutes referenced herein;

F. For an Order finding in favor of Plaintiffs and the nationwide Class;

G. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

H. For prejudgment interest on all amounts awarded;

I.   For an Order of restitution and all other forms of equitable monetary relief;

J.   For injunctive relief as pleaded or as the Court may deem proper;

K.   For an Order awarding Plaintiffs and the Class their reasonable attorneys' fees

and expenses and costs of suit; and

L.   For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs, on behalf themselves and all others similarly situated, hereby demand a jury

trial on all claims so triable.

Dated: April 14, 2015

**Respectfully submitted,**

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

BY:  C.K. Lee, Esq.

# EXHIBIT A

## TABLE OF CONTENTS

BAN® Invisible Solid Deodorant – Unscented.................................................................... 3
BAN® Invisible Solid Deodorant – Shower Fresh ............................................................. 4
BAN® Invisible Solid Deodorant – Powder Fresh ............................................................. 5
BAN® Invisible Solid Deodorant – Sweet Simplicity ........................................................ 6
BAN® Invisible Solid Deodorant – Simply Clean.............................................................. 7

Ban® Invisible Solid Deodorant – Unscented 2.6 oz.



Ban® Invisible Solid Deodorant – Shower Fresh 2.6 oz.



Ban® Invisible Solid Deodorant – Powder Fresh 2.6 oz.



Ban® Invisible Solid Deodorant – Sweet Simplicity 2.6 oz.



Ban® Invisible Solid Deodorant – Simply Clean 2.6 oz.



# EXHIBIT B

Plastic platform on which deodorant sticks stand
is shown below on the right:



# EXHIBIT C

**BAN® NET WEIGHT SHORTFALL BASED ON ACTUAL USABLE PRODUCT**

| Product | Net Weight As Advertised | Weight of Usable Product | Usable Net Weight Shortfall Percentage |
|---|---|---|---|
| Ban® Invisible Solids Deodorant (Unscented) | 2.6 oz. | 2.2 oz. | 15.38% |
| Ban® Invisible Solids Deodorant (Shower Fresh) | 2.6 oz. | 2.1 oz. | 19.23% |
| Ban® Invisible Solids Deodorant (Powder Fresh) | 2.6 oz. | 2.25 oz. | 13.46% |
| Ban® Invisible Solids Deodorant (Sweet Simplicity) | 2.6 oz. | 2.1 oz. | 19.23% |
| Ban® Invisible Solids Deodorant (Simply Clean) | 2.6 oz. | 2.25 oz. | 13.46% |

# EXHIBIT D

**BAN® NET WEIGHT SHORTFALL BASED ON TOTAL NET WEIGHT OF THE PRODUCTS**

| Product | Net Weight As Advertised | Weight of Usable Product | Weight of Unusable Product | Total Net Weight (Usable + Unusable) | Total Net Weight Shortfall Percentage |
|---|---|---|---|---|---|
| Ban® Invisible Solids Deodorant (Unscented) | 2.6 oz. | 2.2 oz. | 0.30 oz. | 2.5 oz. | 3.84% |
| Ban® Invisible Solids Deodorant (Shower Fresh) | 2.6 oz. | 2.1 oz. | 0.15 oz. | 2.25 oz. | 13.46% |
| Ban® Invisible Solids Deodorant (Powder Fresh) | 2.6 oz. | 2.25 oz. | 0.15 oz. | 2.4 oz. | 7.69% |
| Ban® Invisible Solids Deodorant (Sweet Simplicity) | 2.6 oz. | 2.1 oz. | 0.4 oz. | 2.5 oz. | 3.84% |
| Ban® Invisible Solids Deodorant (Simply Clean) | 2.6 oz. | 2.2 oz. | 0.25 oz. | 2.45 oz. | 5.77% |

Travel-Size Degree® Deodorant



[Actual Size]